**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ADAM LUJANO, #R44373,    ) | |
|     ) | |
|     **Plaintiff,**    ) | |
|     ) | |
|     vs.    ) | **Case No. 25-cv-01452-SMY** |
|     ) | |
| JEREMIAH BROWN,    ) | |
| MARCIE BURTON, and    ) | |
| JOHN DOE KITCHEN SUPERVISOR,    ) | |
|     ) | |
|     **Defendants.**    ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, Chief Judge:**

Plaintiff Adam Lujano is an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center. This matter is now before the Court for consideration of Lujano's Motion for Preliminary Injunction (Doc. 3).[1]  Defendants Brown and Burton oppose the motion (Doc. 22). The Court conducted a hearing on the motion on January 29, 2026. For the following reasons, Plaintiff's request for preliminary injunctive relief is **DENIED**.

This case is proceeding on Plaintiff's First Amendment claim that since January 2025, defendants have refused to provide him with a religious diet that conforms to his Muslim/Halal dietary practices. He claims that as a result, he has been deprived of adequate nutrition and his right to practice his religion has been substantially burdened (Docs. 1, 9). Plaintiff requests to be provided with unopened packets of pre-packaged Halal foods and that the food prepared on-site be prayed over by a qualified person before it is served.

---

[1] The Court denied the TRO portion of the motion in the merit review Order (Doc. 9, p. 4).

**Legal Standards**

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).

To obtain a preliminary injunction, a plaintiff must demonstrate: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the relief. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If these elements are established, the Court must then balance the potential harm to the movant if the preliminary injunction were denied against the potential harm to the non-movant if the injunction were granted. *Mays*, 974 F.3d at 810; *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). The Court must also consider whether granting the preliminary injunction is in the public interest. *Courthouse News Serv.*, 908 F.3d at 1068.

Under the First Amendment, "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990); *see Al-Alamin v. Gramley*, 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). This includes observance of religiously mandated dietary restrictions. *See Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) ("We have repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden.") (collecting cases). However, a prison regulation that impinges on an inmate's First Amendment

2

rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner*, 482 U.S. at 90; *Al-Alamin*, 926 F.2d at 686.

Prison officials violate an inmate's right to practice his/her religion when they deny a request for a religious accommodation simply because the accommodations are personal to that inmate, instead of applying to the religious group as a whole. *Vinning-El v. Evans*, 657 F.3d 591, 593-94 (7th Cir. 2011) (discussing *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 834 (1989)). This occurs where a defendant denies an inmate an accommodation because it differs from the beliefs and practices of the religion's leaders. *Id.*

Only those accommodations that reflect sincere religious beliefs must be granted. *Vinning-El*, 657 F.3d at 594. "A prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet tastes, a belief that the preferred diet is less painful for animals, or a prisoner's desire to make a pest of himself . . . ." *Vinning-El*, 657 F.3d at 594. In determining whether a belief is sincerely held, a prison may "give *some* consideration to an organization's tenets . . . . the more a given person's professed beliefs differ from the orthodox beliefs of his faith, the less likely they are to be sincerely held." *Id.* at 594 (emphasis in original). "A personal religious faith is entitled to as much protection as one espoused by an organized group." *Id.* at 593.

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In evaluating whether a regulation restricting prisoners' rights is sufficiently reasonably related to legitimate penological interests to withstand constitutional scrutiny, courts consider:

"(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91).

### Discussion

The Prison Litigation Reform Act ("PLRA") applies to lawsuits filed by incarcerated people and limits the equitable relief a district court can order. 42 U.S.C. § 1997e; 18 U.S.C. § 3626. Under the PLRA "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief[.]" 18 U.S.C. § 3626(a)(2). *See also Brown v. Plata*, 563 U.S. 493, 530 (2011).

Here, Plaintiff testified the prepackaged Halal food the prison provides is certified as Halal and prayed over. However, when prison dietary workers open the packages, the food becomes contaminated. He asserts he is not getting sufficient calories from the small Halal packages and has not received fish packets for two months. He claims his meals amount to only 900 calories per day. He receives additional precooked food prepared at the prison, but that food is not being prayed over as required to conform to his religious diet.

Jason Powell, IDOC's Food Service Administrator, testified as follows: he develops guidance, oversight, and rules for handling religious meals in all IDOC institutions in collaboration with the chief chaplain and dietitian. The Halal-approved food, including plant-based proteins

and meat proteins, comes pre-packaged in foil from a contracted Halal-certified provider (M.J. Kellner). Powell directed food service workers to open the Halal packets onto on a single-use tray to prevent recipients from accumulating the package material and later misusing it for a weapon or placing foreign substances into it to throw on staff. To reduce the risk they could be used for illicit trading or trafficking, the prisons do not allow prisoners to have more than 12 unopened food packets in their cell. Halal food packets are available for purchase from the commissary. For each meal, the prisons supplement the pre-packaged Halal foods, which average 280 calories per packet, with Halal-certified canned fruit, beans, and non-perishable items, as well as fresh fruit and vegetables to achieve a nutritionally adequate diet of about 800 calories per meal. Foods such as fruit and vegetables are naturally Halal and do not need to be prayed over. The food served at Lawrence complies with Halal diet standards.

Jeremy Kohn, the food service program manager at Lawrence, testified: he develops menus, supervises and inspects operations, trains staff and inmate workers, and provides religious diets for those prisoners approved by the chaplain to receive them. The certified Halal meals arrive precooked and sealed. They are opened, warmed, and served on a single-use tray after the addition of vegetables, fruit, milk, bread, and a supplemental protein pack. A supervisor watches the inmate workers who prepare meals. Kohn was not aware of fish packets not being served with the Halal diet trays; the food service has them available.

Based on the evidence presented, Plaintiff has not shown the Constitution or his religious beliefs require him to receive unopened Halal food packages or require the supplemental food items to be prayed over. The credible evidence of record indicates the prepackaged food provided to Plaintiff is properly certified as Halal and the supplemental foods are either Halal-certified or naturally conform to Halal standards. The credible evidence also indicates the prison is providing

5

Plaintiff with adequate caloric intake and nutritionally balanced meals. Additionally, Defendants' witnesses sufficiently explained the security reasons for the policy to open pre-packaged Halal foods before the items are served to Plaintiff. The Court is satisfied those security policies are valid and rational.

Even if Plaintiff's case had *some* likelihood of success on the merits, he has not established that he will suffer irreparable harm in the absence of preliminary injunctive relief or that an eventual remedy in the form of damages would be inadequate.

## Disposition

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction (Doc. 3) is **DENIED**.

Plaintiff was directed to file his motion to substitute the actual name for the John Doe Kitchen Supervisor by January 20, 2026 (Doc. 16) so this individual can be served with notice of the lawsuit. According to Defendants' notice of December 17, 2025 (Doc. 23), Plaintiff was provided the individual's name. Therefore, the John Doe Kitchen Supervisor is **DISMISSED** as a defendant without prejudice.

**IT IS SO ORDERED.**

**DATED:  March 30, 2026**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**Chief U.S. District Judge**